1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BOND MANUFACTURING CO., INC.,

Plaintiff(s),

v.

ASHLEY FURNITURE INDUSTRIES, INC.,

Defendant(s).

Case No. 2:17-CV-1522 JCM (CWH)

AMENDED ORDER

Presently before the court is defendant Ashley Furniture Industries, Inc.'s motion to dismiss. (ECF No. 7). Plaintiff Bond Manufacturing Co. filed a response (ECF No. 12), to which defendant replied (ECF No. 17).

I.    Facts

Plaintiff is an industry leader in the designing and manufacturing of lawn, garden, and outdoor living products. (ECF No. 1). Plaintiff's products are sold in the major retail outlets for such products. *Id.* Plaintiff has invested significant resources in the development and improvement of the materials it uses for its outdoor heating products. *Id.* Plaintiff regularly enters into private label design and manufacturing agreements with third party companies. *Id* These agreements include terms providing that plaintiff will be the exclusive manufacturer and supplier of products that plaintiff designs. *Id.* Plaintiff typically does not execute written private label design and manufacturing agreements before commencing design and manufacturing work with third party companies. *Id.*

Defendant is one of the largest manufacturers, distributors, and sellers of furniture in the United States, with over 450 retail locations doing business under the name Ashley Furniture

HomeStore. *Id*. Defendant also sells its furniture products wholesale to third party furniture retailers. *Id*.

In May of 2016, at the National Hardware Show in Las Vegas, Andy Sokol, vice president of merchandising for defendant and the director of defendant's outdoor patio program, and Cameron Jenkins, president of plaintiff, discussed an agreement between plaintiff and defendant to develop an exclusive patio and outdoor heating furniture program (the "program") for defendant. *Id*. Jenkins was familiar with Sokol. *Id*. Sokol described the program as a private label design and manufacturing program, "knowing that Jenkins would understand the offer as one that was consistent with the private label programs Sokol had worked on [when he was an] executive [for plaintiff]." *Id*.

Sokol had been employed by plaintiff as plaintiff's director of product development for plaintiff's patio program in 2009. *Id*. Because of this employment, Sokol gained a full understanding of plaintiff's policies and practices. *Id*. Plaintiff alleges that Sokol thus knew at the time he offered the program to plaintiff that plaintiff would provide product design and manufacturing services only on the condition that it be the exclusive manufacturer of any its products for the program. *Id*.

On May 9, 2016, Sokol sent Jenkins ideas for the program and requested a meeting on May 29 in China at plaintiff's Shenzhen showroom. *Id*. On May 29, 2016, plaintiff presented designs and samples. *Id*. Sokol identified the designs defendant wanted to include in the program and requested additional renderings of those products and price quotations. *Id*. Following the meeting, Sokol sent an email to plaintiff expressing excitement about plaintiff's participation in the program:

> [B]y the conclusion of this May 29, 2016, meeting, Bond and Ashley had agreed through Jenkins and Sokol: (i) that Bond would proceed with designing and manufacturing product to be displayed by Ashley at Ashley's booth/showroom at the then upcoming Las Vegas Furniture Show under Ashley's brand as part of Ashley's roll-out to the world of its new Signature Line of outdoor furniture, (ii) that the parties would negotiate in good faith over the price to Ashley for such products, and (iii) that should the parties fail to reach agreement on pricing or on Bond's participation in the Ashley Program, Ashley would not be permitted to use, copy, manufacture or sell any Bond designed product.

*Id*.

In response to Sokol's requests on behalf of defendant, plaintiff devoted a large team from plaintiff's China and U.S. offices to work with its manufacturing factories to prepare quotes and samples on an expedited basis. *Id*. Plaintiff began sending price quotations to Sokol on or about June 6, 2016. *Id*.

Communication occurred throughout June regarding the furniture designs. *Id*. Price lists were continually exchanged and updated per defendant's requests. *Id*. Sokol provided plaintiff with defendant's logo in order to incorporate the logo into the products. *Id*.

On July 2, 2016, another meeting was held and Jenkins flew to China to attend. *Id.* At the meeting, Sokol selected the samples defendant wanted for its rollout of its outdoor furniture line at Las Vegas Market. *Id*. Plaintiff made the selected samples and shipped them on-time for defendant's unveiling at Las Vegas Market, as requested by Sokol. *Id*.

Email correspondence continued in July and August of 2016. *Id*. On July 10, 2016, Sokol asked Jenkins if any duties are owed "on the items we are buying from you?" *Id*. On July 21, 2016, Sokol provided Jenkins with a file with target prices for the cost of plaintiff's products. *Id*. On July 22, 2016, Jenkins emailed Sokol an updated file with the "final and best pricing that [plaintiff] can offer." *Id*. Price-related discussions continued for another week. *Id*.

On August 2, 2016, during a meeting at the Las Vegas Market, Sokol informed Jenkins that defendant may manufacture plaintiff's furniture products itself or through other manufacturers in order to get the same product at a lower price. *Id*. Jenkins informed Sokol that while defendant may use another manufacturer for outdoor furniture, it could not use any of plaintiff's designs to do so, and that plaintiff's products were proprietary to plaintiff and the subject of patent and copyright protection. *Id*. Negotiations continued despite the threat to use other manufacturers. *Id*.

On August 17, 2016, Sokol informed Jenkins that the program would be finalized the coming week and orders sent shortly after. *Id.* The email also stated that defendant was planning to order 75 products per month to start, with a forecast of 900 products for the first season. *Id*.

On August 19, 2016, defendant invited plaintiff's China team to meet with defendant's representatives at defendant's Dongguan office for training on defendant's purchase order process. *Id*. The factory owner from one of plaintiff's OEM factories who would be responsible for

1  manufacturing some of the plaintiff's furniture products was also in attendance. *Id*. A

2  representative of plaintiff contacted this factory owner to question why he had attended the training

3  meeting. *Id*. The factory owner acknowledged that defendant's representatives had contacted him

4  directly to ask that his factory make certain of the plaintiff's products for direct delivery to

5  defendant, thereby cutting plaintiff out of any transaction. *Id*.

6      On or about January 25, 2017, defendant began marketing and promoting various furniture

7  products which plaintiff alleges are direct knock-offs of plaintiff's furniture products. *Id*. Plaintiff

8  alleges that defendant used photographs and video Sokol took of plaintiff's products in plaintiff's

9  showroom. *Id*. Defendant is also selling knock-off products wholesale to numerous third party

10 retail companies. *Id*.

11     Plaintiff alleges that defendant has a consistent pattern of breaking its contractual promises

12 and infringing the intellectual property of furniture companies.[1] *Id*.

13     On May 30, 2017, plaintiff filed suit against defendant, alleging thirteen claims for relief.

14 *Id*.

15 **II.    Legal Standard**

16     A court may dismiss a complaint for "failure to state a claim upon which relief can be

17 granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain

18 statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell*

19 *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed

20 factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the

21 elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

22

23     [1] In 2006, defendant was named in a series of copyright infringement lawsuits regarding
24 the sale of bedding and fabric designs. *See Eastern Accents, Inc. et al v. Ashley Furniture Industries, Inc. et al*, Case No. 06- cv-00658−JAB−WWD (M.D. N.C.); *Kingsway Fabrics Inc. et al v. Ashley Furniture Industries, Inc. et al*, Case No 06-cv-00839-WLO-WWD (M.D. N.C.);
25 *American Century Home Fabrics, Inc. v. Ashley Furniture Industries, Inc. et al*, Case No. 06-cv-10932-JLT (D. Mass.). (ECF No.1 ). "In 2008, Ashley was accused of trade dress infringement
26 and unfair competition by Casana Furniture Company for selling a line of furniture products that copied Casana's trade dress rights in its furniture products. *See Casana Furniture Company, Ltd.*
27 *v. Ashley Furniture Industries, Inc.*, Case No. 08-cv-00908-WO-WWD (M.D. N.C.)." *Id*.
"[Defendant] has also faced several accusations of trademark infringement in connection with its
28 sales of furniture products. *See Bogart LLC v. Ashley Furniture Industries Inc et al*, Case No. 10-cv-00039-CDL (M.D. Ga.)." *Id*.

**James C. Mahan**
**U.S. District Judge**

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

## III.    Discussion

Defendant moves to dismiss the first, second, third, fourth, sixth, seventh, twelfth, and thirteenth claims in plaintiff's complaint. (ECF No. 7).

**James C. Mahan**
**U.S. District Judge**

Plaintiff's first, second, and fourth claims are contract-based claims. (ECF No. 1). Plaintiff's first claim alleges breach of contract, the second alleges breach of the implied covenant of good faith and fair dealing, and the fourth alleges unjust enrichment. *Id*. Plaintiff's third claim alleges tortious breach of the implied covenant of good faith and fair dealing, the sixth alleges intentional misrepresentation/fraud, the seventh alleges negligent misrepresentation, the twelfth alleges civil conspiracy, and the thirteenth alleges violations of the Nevada RICO statute. (ECF No. 1).

### a. Plaintiff's contract-based claims

Defendant brings several challenges to plaintiff's contract-based claims. (ECF No. 7). Defendant asserts that punitive damages are not available for contract-based claims. *Id*. Defendant further asserts that plaintiff's first and second contract-based claims should be dismissed because the parties had no meeting of the minds on the material term of the price of plaintiff's manufactured goods and because the contract constitutes an unenforceable agreement to agree. (ECF Nos. 7 & 17).

### i. Punitive damages for contract claims

Defendant asserts that case precedent in Nevada clearly demonstrates that punitive damages are not available for contract-based claims. (ECF No. 7).

N.R.S. 42.005(1) provides for punitive damages where a plaintiff can demonstrate by clear and convincing evidence that a defendant acted with "oppression, fraud or malice, express or implied," in "an action for the breach of an obligation not arising from contract."

Punitive damages are not awarded for breach of contract. *Bergerud v. Progressive Cas. Ins.*, 453 F. Supp. 2d 1241, 1251 (D. Nev. 2006) (citing *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 113 Nev. 346, 934 P.2d 257, 263 (Nev. 1997)). However, punitive damages may be available for breaches the implied covenant of good faith. *Id*. In order to make this assertion, a plaintiff must have a contractual relationship to assert a bad faith claim. *Bergerud*, 453 F. Supp. 2d at 1251 (citing *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 197 (Nev. 1989)); *see also Hunter v. Weiss*, 2016 Nev. Dist. LEXIS 1411 *13 ("Weiss is entitled to an award of punitive damages on the Second Claim For Relief for Breach of Breach of Implied Covenant of Good Faith and Fair Dealing").

James C. Mahan
U.S. District Judge

The court in *United Fire* held that "proof of bad faith, by itself, does not establish liability for punitive damages;" however, a plaintiff who shows evidence of "oppression, fraud, or malice, express or implied," may recover. 105 Nev. 504, 512, 780 P.2d 193, 198 (1989) (quoting NRS 42.010) (citing *U.S. Fidelity v. Peterson*, 91 Nev. 617, 620, 540 P.2d 1070, 1072 (1975)).

Defendant's motion to dismiss plaintiff's request for punitive damages as to plaintiff's breach of contract and unjust enrichment claims is granted. However, as punitive damages may be available for breaches of the implied covenant of good faith, *Bergerud*, 453 F. Supp. 2d at 1251, the court will deny defendant's motion to dismiss plaintiff's request for punitive damages on its fourth cause of action.

*ii. Plaintiff's first and second contract-based claims*

Defendant asserts that plaintiff's contract-based claims should be dismissed because the parties had no meeting of the minds in regards to the material term of the price of plaintiff's manufactured goods. (ECF No. 7). Defendant also contends that plaintiff's first and second contract-based claims should be dismissed because the alleged contract constitutes an agreement to agree, which is not an enforceable contract. (ECF No. 17).

Plaintiff asserts that the contract was not for purchase of plaintiff's manufactured goods, but instead provided

> (i) that [plaintiff] would proceed with designing and manufacturing product to be displayed by [defendant] at [defendant's] booth/showroom at the then upcoming Las Vegas Furniture Show under [defendant's] brand as part of [defendant's] roll-out to the world of its new Signature Line of outdoor furniture, (ii) that the parties would negotiate in good faith over the price to [defendant] for such products, and (iii) that should the parties fail to reach agreement on pricing or on [plaintiff's] participation in the [program], [defendant] would not be permitted to use, copy, manufacture or sell any [plaintiff] designed product (the [program]).

(ECF No. 12 (quoting ECF No. 1)). Plaintiff asserts that because the contract at issue was not for purchase, price is not a material term. (ECF No. 12). Therefore, plaintiff contends it has sufficiently pleaded its contract-based claims. *Id.*

Under Nevada law, "to succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." *Laguerre v. Nev. Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011) (citing *Bernard v. Rockhill Dev. Co.*, 734 P.2d

James C. Mahan
U.S. District Judge

- 7 -

1238, 1240 (Nev. 1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement.")).

"Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). Whether a party has breached a contract and whether the breach is material are questions of fact. *Hoffman v. Eighth Judicial Dist. Ct.*, 523 P.2d 848, 850 (Nev. 1974). Contractual construction, however, is a question of law and "suitable for determination by summary judgment." *Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990). A court "should not rewrite contract provisions that are otherwise unambiguous." *Id.* ("[C]ontracts will be construed from the written language and enforced as written."). "Policy terms should be viewed in their plain, ordinary and popular connotations." *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev. 1986).

In Nevada, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 105 Nev. 913, 784 P.2d 9, 9 (Nev. 1989). This implied covenant requires that parties "act in a manner that is faithful to the purpose of the contract and the justified expectations of the other party." *Morris v. Bank of Am. Nev.*, 110 Nev. 1274, 886 P.2d 454, 457 (Nev. 1994) (internal quotation marks omitted).

"No naked agreement to agree constitutes a contract." *Cable & Comput. Tech., Inc. v. Lockheed Sanders, Inc.*, 214 F.3d 1030, 1035 (9th Cir. 2000) (citing *Gene Autry v. Republic Productions*, 30 Cal. 2d 144, 151, 180 P.2d 888 (1947)). However, an agreement to use best efforts to achieve a common objective is a closed, discrete, and actionable proposition. *Channel Home Centers v. Grossman*, 795 F.2d 291, 299 (3d Cir. 1986).

In *Hannon v. Wells Fargo Home Mortgage*, the court held that "a mere 'agreement to agree' is generally non-binding and unenforceable." No. 2:10-cv-00966-MMD-GWF, 2012 U.S. Dist. LEXIS 88741, at *11 (D. Nev. June 26, 2012) (citing to *Smith v. Crown Fin. Serv. of Am.*, 111 Nev. 277, 890 P.2d 769, 771 (Nev. 1995)). In *VeriFone, Inc. v. A Cab, LLC*, the court similarly held that in Nevada, "an agreement to agree at a future time is nothing and will not support an action for damages." No. 2:15-cv-00157-GMN-GWF, 2017 U.S. Dist. LEXIS 106633, at *9 (D.

Nev. July 10, 2017) (quoting *City of Reno v. Silver State Flying Serv.*, 84 Nev. 170, 438 P.2d 257, 261 (1968)); *see also Kohlmoos Enterprises v. Pines, LLC*, No. 58911, 2013 Nev. Unpub. LEXIS 1462, 2013 WL 5476860, at *1 (Nev. Sept. 26, 2013) ("Nevada abides by traditional jurisprudence that agreements to agree are generally too indefinite to enforce as final agreements."). The court in *VeriFone* held that the section of the contract at issue that constituted an agreement to agree was, therefore, unenforceable. 2017 U.S. Dist. LEXIS 106633, at *9.

Here, plaintiff asserts that the contract was a contract governing the pre-sale negotiation process. (ECF No. 12). The contract itself did not effectuate a sale; it instead concerned the parties' respective rights and responsibilities with respect to proprietary information. *Id.* Therefore, defendant's argument that there was no meeting of the minds at to "purchase price" does not warrant dismissal of plaintiff's contract-based claims.

However, defendant is correct that an agreement to agree is not enforceable. *VeriFone*, 2017 U.S. Dist. LEXIS 106633, at *9; *Hannon v. Wells Fargo Home Mortgage*, 2012 U.S. Dist. LEXIS 88741, at *11. Therefore, the agreement to negotiate within the oral agreement between plaintiff and defendant is unenforceable.

Defendant fails to address the other two provisions of the agreement alleged by plaintiff: (i) that plaintiff would proceed with designing and manufacturing product to be displayed by defendant's booth at the Las Vegas Furniture Show, and (iii) that should the parties fail to reach agreement on pricing or on plaintiff's participation in the program, defendant would not be permitted to use, copy, manufacture or sell any plaintiff-designed product. (ECF No. 12).

      *b. FRCP 12(b)(6) applied to plaintiff's third, sixth seventh, twelfth, and thirteenth claims*

Defendant also moves to dismiss plaintiff's third, sixth, seventh, twelfth, and thirteenth claims. (ECF No. 7).

      *i. Plaintiff's third claim*

Defendant asserts that plaintiff's third cause of action, for tortious breach of the implied duty of good faith and fair dealing should be dismissed because plaintiff cannot sufficiently allege a special relationship between plaintiff and defendant. (ECF No. 7). Plaintiff contends that it has

1  sufficiently alleged a special relationship between plaintiff and defendant via the trusted

2  relationship between principal of plaintiff, Jenkins, and principal of defendant, Sokol. (ECF No.

3  12).

> As a general rule, breach of the implied covenant of good faith and fair dealing is a
> contract claim. *See A.C. Shaw Constr., Inc. v. Washoe County*, 105 Nev. 913, 784
> P.2d 9, 9 (Nev. 1989). However, an exception exists for a tortious breach of the
> implied covenant of good faith and fair dealing when a plaintiff shows a special
> element of either reliance or fiduciary duty because the defendant was in a superior
> or entrusted position. *Id*. at 10. Tort liability for breach of the good faith covenant
> is limited to "rare and exceptional cases," *K Mart Corp. v. Ponsock*, 103 Nev. 39,
> 732 P.2d 1364, 1370 (Nev. 1987), and is appropriate where "the party in the
> superior or entrusted position" has engaged in "grievous and perfidious
> misconduct." *Great Am. Ins. Co.*, 934 P.2d at 263.

9  *Kwok v. Recontrust Co.*, N.A., No. 2:09-cv-2298-RLH-LRL, 2010 U.S. Dist. LEXIS 63411, at *7

10 (D. Nev. June 23, 2010)

11 The Nevada Supreme Court has held that a special relationship may exist where "one party

12 interposes confidence in the other because of that person's position and the other party knows of

13 this confidence." *Mackintosh v. Matthews & Co.*, 855 P.2d 549, 553 (Nev. 1993) (quoting *Mancini*

14 *v. Gorick*, 41 Ohio App. 3d 373, 536 N.E.2d 8, 9 (Ohio Ct. App. 1987)); *see also Nev. Power Co.*

15 *v. Monsanto Co.*, 891 F. Supp. 1406, 1416 (D. Nev. 1995).

16 The Nevada Supreme Court has recognized a "special relationship" in associations such as

17 real estate agents/buyers, insurers/insureds, trustees/beneficiaries, and attorneys/clients, where

18 "[n]ondisclosure ... become[s] the equivalent of fraudulent concealment." *Las Vegas Metro.*

19 *Police Dep't v. Harris Corp.*, No. 2:13-cv-01780-GMN-VCF, 2015 U.S. Dist. LEXIS 26694, at

20 *17 (D. Nev. Mar. 3, 2015) (quoting *Nev. Power Co.*, 891 F. Supp. at 1416 n. 3 (citing cases)).

21 In *Summit Growth Management., LLC v. Marek*, the court held that a friendship between

22 the defendant and a principal of the plaintiff corporation did not create a "special relationship."

23 No. 3:12-cv-170-RCJ-WGC, 2012 U.S. Dist. LEXIS 127287, at *17-18 (D. Nev. Sep. 6, 2012)

24 Here, the assertion that a special relationship existed between plaintiff and defendant

25 because a principal of defendant, Sokol, worked for plaintiff seven years prior to the alleged

26 violation alone is insufficient. *See Mackintosh*, 855 P.2d at 553 (holding that special relationship

27 exists where one party interposes confidence in the other and the other party knows of this

28 confidence); (ECF No. 12). The assertion that Sokol "knew [defendant] would trust him" based

**James C. Mahan**
**U.S. District Judge**

1  solely on employment seven years prior does not demonstrate that defendant interposed confidence

2  on plaintiff nor that defendant knew of this confidence. *Id.* Moreover, in its complaint, plaintiff

3  concedes that Sokol's history with plaintiff and Jenkins meant his statements were more valued

4  "even if Sokol personally was not aware at the time that [defendant] would use his trusted

5  relationship to deceive, defraud and harm [plaintiff]." (ECF No. 1).

6        Plaintiff has not demonstrated that a special relationship existed between plaintiff and

7  defendant. Therefore, the court will dismiss plaintiff's third claim for relief.

8                    *ii.  Plaintiff's sixth and seventh claims*

9        Defendant asserts that plaintiff's sixth and seventh claims, for intentional and negligent

10  misrepresentation, should be dismissed because plaintiff has failed to provide a specific

11  misrepresentation to support either claim. (ECF No. 7).

12        Plaintiff asserts that it has alleged a misrepresentation supporting each claim with sufficient

13  specificity. (ECF No. 12). Plaintiff asserts that between May 4 and May 6, 2016, at the National

14  Hardware Show in Las Vegas, Sokol made the misrepresentation that defendant's program was a

15  "private label design and manufacturing program" when Sokol knew or should have known that it

16  was not. (ECF Nos. 1 & 12).

17        To state a claim for intentional misrepresentation—or fraud—under Nevada law, a plaintiff

18  must sufficiently plead (1) a false representation made by the defendant; (2) defendant's knowledge

19  or belief that the representation is false or insufficient basis for making the representation; (3)

20  defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the

21  misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damages.

22  *Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 111, 825 P.2d 588, 592 (1992).

23        Nevada defines the tort of negligent misrepresentation as,
     (1) One who, in the course of his business, profession or employment, or in any
24   other action in which he has a pecuniary interest, supplies false information for the
     guidance of others in their business transactions, is subject to liability for pecuniary
25   loss caused to them by their justifiable reliance upon the information, if he fails to
     exercise reasonable care or competence in obtaining or communicating the
26   information.

27  *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 448-49, 956 P.2d 1382 (1998) (citing *Bill Stremmel*

28  *Motors, Inc. v. First Nat'l Bank of Nev.*, 94 Nev. 131, 134, 575 P.2d 938 (1978)).

1    In its motion, defendant argues that plaintiff has failed to assert a misrepresentation. (ECF

2  No. 7).    However, plaintiff, in its complaint and in the reply, makes clear the alleged

3  misrepresentation.  (ECF Nos. 1 & 12).  The alleged misrepresentation, made by Sokol at the

4  National Hardware Show, was that defendant's program was a "private label design and

5  manufacturing program."  *Id*.  Plaintiff asserts that Sokol made this representation "knowing that

6  Jenkins would understand the offer as one that was consistent with the private label programs

7  Sokol had worked on while a [defendant] executive." (ECF No. 1).

8    Defendant's argument that Sokol's statements at the National Hardware Show were merely

9  "ritualistic progress statements," such as "we have a deal", or "invitations to further negotiate" is

10  unconvincing in regards to this motion.  (ECF No. 7).  The misrepresentation alleged, that the

11  program is a "private label design and manufacturing program," is not a "ritualistic progress

12  statement" nor an "invitation to further negotiate," but rather a specific representation which was

13  either true or not at the time it was made.

14    Because defendant does not address in its motion or response the specific misrepresentation

15  identified by plaintiff, the court will deny defendant's motion to dismiss as to plaintiff's sixth and

16  seventh claims.

17    *iii.   Plaintiff's twelfth claim*

18    Defendant claims that plaintiff's twelfth cause of action, for civil conspiracy, should be

19  dismissed because plaintiff has failed to allege any coconspirators with whom defendant conspired.

20  (ECF No. 7).  Plaintiff's conspiracy claim alleges only that defendant and its officers, directors

21  and/or agents conspired together, but defendant asserts that agents or employees acting in their

22  official capacities cannot conspire with their corporate employer. *Id*.

23    Civil conspiracy is a Nevada state law claim that "consists of a combination of two or more

24  persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose

25  of harming another, and damage results from the act or acts." *Banerjee v. Cont'lInc., Inc.*, No.

26  2:16-cv-669-JCM-VCF, 2016 U.S. Dist. LEXIS 141891, 2016 WL 5939748, at \*6-7 (D. Nev. Oct.

27  11, 2016) (quoting *Consol.—Generator Nev., Inc. v. Cummins Engine Co., Inc.*, 114 Nev. 1304,

28  971 P.2d 1251, 1256 (Nev. 1998)).

**James C. Mahan**
**U.S. District Judge**

1    To state a claim for civil conspiracy, plaintiffs must allege two elements: (1) the

2   commission of an underlying tort; and (2) an agreement between the defendants to commit that

3   tort. *GES, Inc. v. Corbitt*, 117 Nev. 265, 21 P.3d 11, 15 (Nev. 2001). Further, when pleading a

4   claim for civil conspiracy, plaintiffs must plead with particular specificity as to "the manner in

5   which a defendant joined in the conspiracy and how he participated in it." *Arroyo v. Wheat*, 591

6   F. Supp. 141, 144 (D. Nev. 1984).

7        As currently pleaded, plaintiff's claim fails to state a claim upon which relief can be

8   granted.[2] *See Arroyo*, 591 F. Supp. at 144.

9                        *iv.   Plaintiff's thirteenth claim*

10       Defendant alleges that plaintiff's thirteenth claim, for civil RICO violations, should be

11  dismissed because plaintiff has not alleged elements necessary to further a civil RICO claim. (ECF

12  No. 7). Defendant asserts that plaintiff's RICO claim for conspiracy to commit criminal acts

13  should fail because plaintiff has not alleged a co-conspirator. *Id*. Defendant further asserts that

14  plaintiff's claim does not allege a specific criminal scheme in which defendant participated. *Id*.

15       Plaintiff does not address defendant's challenge to the thirteenth cause of action because

16  plaintiff asserts that it is withdrawing its thirteenth claim in a pending amended complaint. (ECF

17  No. 12). Therefore, the court will grant defendant's motion to dismiss as to plaintiff's RICO claim.

18  **IV.   Conclusion**

19       Defendant's motion to dismiss plaintiff's request for punitive damages as to its breach of

20  contract and unjust enrichment claims is granted, but the motion is denied as to breach of implied

21  covenant of good faith and fair dealing.

22

23

24

---

25       [2] Plaintiff asserts that while the complaint alleged that defendant contacted one of
    plaintiff's Chinese manufacturers, at the time the complaint was filed, the full extent of the
26  conspiracy was not yet known to plaintiff. (ECF No. 12). Plaintiff, therefore, requests leave to
    amend its complaint to establish that defendant conspired with the Sanshui and Mr. Wang, the
27  general manager of plaintiff's Chinese manufacturer, "to wrongfully obtain Bond's proprietary
    information, trade secrets, and designs, when such co-conspirators were fully aware of Bond's
    rights in and to such property, and to wrongfully manufacture knock-offs of the Bond Furniture
28  Products." *Id*. As plaintiff has not filed a motion for leave to amend, the court will not consider
    the request.

1    The court holds that an agreement to negotiate does not constitute a valid and enforceable

2  contract provision, and will grant defendant's motion to dismiss in part as to defendant's challenge

3  to contract claims one and two.

4    The court will grant defendant's motion to dismiss plaintiff's third claim. The court will

5  deny defendant's motion to dismiss plaintiff's sixth and seventh claims. The court will grant

6  defendant's motion to dismiss plaintiff's twelfth and thirteenth claims.

7    Accordingly,

8    IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion to

9  dismiss (ECF No. 7) be, and the same hereby is, GRANTED IN PART and DENIED IN PART

10  consistent with the foregoing.

11    DATED March 27, 2018.

12

13    _____
      UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28